# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59534-6-II |
| Respondent, | |
| v. | |
| ALEXANDRA SHAWN MIRANTI, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Alexandra S. Miranti appeals her conviction for possession of a stolen vehicle. Miranti argues that she was denied her constitutional right to a fair and impartial jury when the trial court failed to excuse a juror for cause. We disagree and affirm Miranti's conviction.

FACTS

A.    BACKGROUND

In June 2022, the police received a stolen vehicle report. After some investigation, the State charged Miranti with one count of possession of a stolen vehicle. The case proceeded to a jury trial.

B.    CHALLENGE TO JUROR 3

On the first day of trial, Juror 3 informed the trial court that he suspected Miranti was under the influence of drugs during voir dire. Miranti requested individual voir dire, during which Juror 3 explained his observations of Miranti and his familiarity with the effects of substance use. Juror 3 stated that he believed Miranti was on drugs because her eyes were "slow to respond like she was nodding out."  1 Verbatim Rep. of Proc. (VRP) (Apr. 2, 2024) at 314.  Juror 3 also discussed

his experience with family members who had substance abuse issues, which informed his concern

that Miranti was on drugs. Based on his experience, Juror 3 was concerned that Miranti may not

be "present" in her defense, and he believed that Miranti should be "present . . . physically as well

as mentally, emotionally." 1 VRP (Apr. 2, 2024) at 314.

Miranti then inquired into Juror 3's potential bias:

> [DEFENSE]: Do you think that's going to affect you during the course of the trial?
>
> JUROR #3: And I don't know. I need to hear more of the evidence. . . .
>
> . . . I'm confessing, this is my bias, right? I will want to know whether or not she's present for her own defense, even if I do agree that she doesn't necessarily need to speak in her own defense. Right?
>
> . . . .
>
> [DEFENSE]: And do you . . . think if you believe that she was on drugs that that would affect you in believing she's not present for trial?
>
> JUROR #3: Yes, yes, I do believe that.

1 VRP (Apr. 2, 2024) at 314-15. The State also examined Juror 3's potential bias:

> [STATE]: So you mentioned that you would want her to be present for the trial. If during the trial, whether it was yesterday or in the future or today, you are watching the defendant and you feel that she is not present or under the influence of drugs . . . is that going to affect your decision, even [if] it wasn't raised by anybody in the courtroom and you just noticed it on your own?
>
> JUROR #3: So it's a qualified yes. I want to make sure that I'm not working harder than the defendant in her defense.

1 VRP (Apr. 2, 2024) at 316-17. Next, the trial court explored the extent of Juror 3's bias and

ability to be impartial:

> [THE COURT]: . . . The State has the burden of proof. So if she's a sleep [sic] over there and . . . the testimony does not support that she was in possession.

2

Are you saying that just because she is sleeping . . . and not present, that you would not hold the State to its burden of proving its case?

JUROR #3: No ma'am, I'm not saying that.

. . . .

. . . I'll still hold the State to its burden of proof. But I'm also confessing that it's going to be a somewhat steeper hill if I realize again that I am working harder in her defense than she is.

. . . .

. . . So that, again, that's the reason I raised it is because yes, I do believe in the State's burden of proof. I believe that very strongly. But we were talking yesterday about our biases. Right? And—

[THE COURT]: So it sounds like you may be saying that [the] State is going to do their evidence, and if it seems close to you as to whether or not they've proven it . . . you're probably going to weigh it against her. . . .

JUROR #3: No, . . . not after. I'm saying that at the outset. . . .

. . . .

. . . I'm coming in with open ears and an open mind to hear the evidence.

. . . .

. . . And I'm saying that if it all comes down to it at the end I'm going to go ahead and err on the side of "I'm working harder."

1 VRP (Apr. 2, 2024) at 317-18.

Miranti moved to remove Juror 3 for cause, pointing to the "steeper hill if at the end he feels he's working harder than the defendant." 1 VRP (Apr. 2, 2024) at 319. The State objected, reiterating that Juror 3 confirmed he would be willing to follow the trial court's instructions and that he would listen to the evidence with open ears.

The trial court denied Miranti's request to remove Juror 3 for cause. In explaining its ruling, the trial court highlighted Juror 3's response that Miranti argues suggested Juror 3 would weigh any closeness in favor of the State. The trial court described Juror 3's response as "very adamant" that he would still hold the State to its burden of proof and stated that Juror 3 "clearly said '[n]o, it's not what I'm going to do. That's after I've heard the evidence.'" 1 VRP (Apr. 2, 2024) at 321. Accordingly, the trial court found that based on the responses, Juror 3 would still listen and decide the case based on the evidence.

## C. MIRANTI'S CONDUCT DURING TRIAL

The trial court noted on the record that Miranti was falling asleep during trial. But the record is not clear when during the trial the trial court was referencing. However, the record clearly shows that while the jury was absent, the trial court addressed Miranti, saying "it is clear that you are either under the influence or (inaudible)." 2 VRP (Apr. 8, 2024) at 548. Miranti and her counsel denied that she was under the influence and claimed that she was just tired.

The next day, while the parties discussed jury instructions outside the presence of the jury, the trial court stated that Miranti was "kind of dozing." 2 VRP (Apr. 9, 2024) at 608. The trial court further suggested that Miranti take notes to keep her eyes open.

At the conclusion of trial, the jury returned a guilty verdict for one count of possession of a stolen vehicle.

Miranti appeals.

ANALYSIS

A.    LEGAL PRINCIPLES

Miranti argues that because Juror 3 was biased, the trial court violated Miranti's constitutional right to a fair and impartial jury by failing to remove Juror 3. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to a fair trial by an impartial jury. *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540, *review denied*, 186 Wn.2d 1028 (2016). "To safeguard this right, judges must remove jurors for cause when the jurors cannot fairly decide a case, either on a party's motion to strike the juror or on the court's own motion in clear cases of bias." *State v. Smith*, 3 Wn.3d 718, 720, 555 P.3d 850 (2024).

Additionally, under RCW 2.36.110, the trial court is required to excuse any juror who "has manifested unfitness as a juror by reason of bias." And, under CrR 6.5, "[i]f at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged." "RCW 2.36.110 and CrR 6.5 place a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror." *State v. Jorden*, 103 Wn. App 221, 227, 11 P.3d 866 (2000), *review denied*, 143 Wn.2d 1015 (2001).

A trial court must excuse any juror who has actual bias. *State v. Slert*, 186 Wn.2d 869, 877, 383 P.3d 466 (2016); CrR 6.4(c)(1). "Actual bias" is "'the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.'" *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015), *review denied*, 184 Wn.2d 1036 (2016) (quoting RCW 4.44.170(2)).

Removal of a potential juror for actual bias requires affirmative proof. *Smith*, 3 Wn.3d at 724. A defendant must show "'more than a mere possibility that the juror was prejudiced.'" *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.3d 190 (1991) (italics omitted) (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE § 202, at 331 (4th ed. 1986)). Unequivocal statements showing bias without assurance of impartiality can establish actual bias because "'no nuance of inflection or demeanor can overwhelm the explicit meaning of [an unequivocal statement of partiality].'" *Smith*, 3 Wn.3d at 726 (alteration in original) (quoting *State v. Booth,* 24 Wn. App. 2d 586, 600, 521 P.3d 196 (2022), *review denied*, 1 Wn.3d 1006 (2023)). But to excuse a juror based on actual bias, "'the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.'" *State v. Sullivan*, 196 Wn. App. 277, 288, 383 P.3d 574 (2016), *review denied*, 187 Wn.2d 1023 (2017) (quoting RCW 4.44.190).

We review a trial court's decision on whether to remove a challenged juror for a clear abuse of discretion, "where no reasonable judge would have made the same decision." *Smith*, 3 Wn.3d at 721, 727. Deference is given to the trial court because "they can observe the juror's demeanor and tone, gauging the subtler tells of bias that may not be captured in the transcripts." *Id.* at 720-21.

B.     DENIAL OF MOTION TO REMOVE FOR CAUSE

Miranti argues that the trial court violated her constitutional right to a fair and impartial jury because the court denied Miranti's motion to remove Juror 3 for cause. We disagree.

To remove Juror 3 for cause, Juror 3 must have had actual bias. During individual voir dire, Juror 3 informed the trial court that based on his experience with family members, he believed

Miranti was on drugs on the day of general voir dire. Juror 3 described his belief that Miranti should be present for her defense and expressed that it would a be a "somewhat steeper hill" if he felt that he was working harder than Miranti was. 1 VRP (Apr. 2, 2024) at 318. Thus, given Juror 3's expressed concerns about Miranti's suspected drug use and presence in her defense, Juror 3 demonstrated a possible bias.

However, the record does not show that Juror 3 had an *actual* bias; Juror 3 stated that he could disregard his opinions and decide the case based on the evidence. The trial court expressly asked Juror 3 if he would not hold the State to its burden of proof even if the testimony did not support that Miranti was in possession just because Miranti was sleeping and not present. Juror 3 responded:

No ma'am, I'm not saying that.

. . . .

. . . I'll still hold the State to its burden of proof. But I'm also confessing that it's going to be a somewhat steeper hill if I realize again that I am working harder in her defense than she is.

. . . .

. . . So that, again, that's the reason I raised it is because yes, I do believe in the State's burden of proof. I believe that very strongly.

1 VRP (Apr. 2, 2024) at 317-18. Moreover, when asked if he would weigh his belief that he was working harder than Miranti against her, Juror 3 clearly stated that he would not and that he would approach the case with "open ears and an open mind to hear the evidence." 1 VRP (Apr. 2, 2024) at 318.

Miranti attempts to interpret Juror 3's statements as saying that Juror 3 would "render a judgment based on the evidence and hold the State to its burden" only if "he believed Miranti was 'working' hard enough in her own defense . . . for a not-guilty verdict." Br. of Appellant at 17-18. This misinterprets Juror 3's statements. Juror 3 did not condition a judgment based on Miranti working hard enough for a not guilty verdict.

Thus, despite Juror 3's potential bias, the record shows that Juror 3 could set aside his opinions and decide based on the evidence and the State's burden of proof. Juror 3 did not show actual bias such that the trial court should have removed him for cause. Therefore, the trial court did not abuse its discretion in denying Miranti's motion to remove Juror 3 because there was no evidence of actual bias.

C.     ALLOWING JUROR 3 TO REMAIN ON THE JURY

Miranti further argues the trial court erred by failing to dismiss Juror 3 on its own motion because the trial court recognized Miranti was falling asleep during trial such that she may not be "present" according to Juror 3's description. We disagree.

The trial court would be required to remove Juror 3 if Juror 3 was actually biased against Miranti. Miranti argues that the trial court should have removed Juror 3 because the court was aware that Miranti had fallen asleep during the trial and that Juror 3, as a result, would believe Miranti was not present in her defense. Although the trial court has a continuous obligation to excuse unfit jurors, there is no evidence that even if Juror 3 had observed Miranti falling asleep during trial Juror 3 became actually biased against Miranti.

As discussed above, Juror 3 expressed his concerns during voir dire about Miranti's suspected drug use and his belief that Miranti should be "present" in her defense. However, despite

his concerns, Juror 3 was clear that he would approach the case with "open ears and an open mind to hear the evidence" and hold the State to its burden of proof. 1 VRP (Apr. 2, 2024) at 318. Juror 3's opinion regarding Miranti being "present" during the trial did not demonstrate an actual bias against Miranti. And there is nothing in the record that shows Juror 3 had observed Miranti falling asleep during trial, or that Juror 3 was not approaching his duties as a juror impartially or not holding the State to its burden of proof. The trial court did not abuse its discretion by allowing Juror 3 to remain on the jury throughout the trial.

## CONCLUSION

The trial court did not abuse its discretion in denying Miranti's motion to remove Juror 3 for cause and allowing Juror 3 to remain on the jury throughout the trial. Therefore, we affirm Miranti's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Price, J.